IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

SHERMAN DIVISION



| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | NOV **2 5** 2024 |
| Plaintiff, | § | Clerk, U.S. District Court |
| | § | Texas Eastern |
| VS. | § | Cr No. 4:18-cr-00046-SDJ-BD-16 |
| | § | |
| CRISTIAN MENDOZA, | § | |
| (SPN # 28120-078) | § | |
| | § | |
| Respondent. | § | |

## **MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(C)(1)(A) AND THE FIRST STEP ACT OF 2018**

COMES Movant, CRISTIAN MENDOZA ("Mendoza"), appearing *pro se,* and in support of this memorandum would show as follows:

### **I. JURISDICTION**

The district court's jurisdiction to correct or modify a defendant's sentence is limited to those specific circumstances enumerated by Congress in 18 U.S.C. § 3582. The scope of a proceeding under 18 U.S.C. § 3582(c)(2) in cases like this one is extremely limited. *Dillon v. United States*, 130 S.Ct. 2683, 2687(2010). It is black-letter law that a federal court generally "may not modify a term of imprisonment once it has been imposed." *Id.* However, Congress has allowed an

1

exception to that rule "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2); see also, *Freeman v. United States*, 131 S.Ct. 2685 (2011) (reciting standard for sentence modifications). Such defendants are entitled to move for retroactive modification of their sentences. *Dillon*, 130 S.Ct. at 2690–91.

## II. <u>PROCEDURAL HISTORY</u>

On November 15, 2018, the grand jury sitting in the United States District Court for the Eastern District of Texas, Sherman Division, returned an three (3) count Fourth Superseding Indictment charging Mendoza. See Doc. 465.[1] Count lssss charged Mendoza with Conspiracy to Possess with Intent to Distribute 50 Grams or More of Methamphetamine (Actual), in violation of 21 U.S.C. §§ 841(a)(1) and 846. *Id.* Count 2ssss charged Mendoza with Conspiracy to Possess with Intent to Distribute 1 Kilogram or More of Heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 846. *Id.* Count 3ssss charged Mendoza with Possession of Firearms In Furtherance

---

[1]

"Doc." refers to the Docket Report in the United States District Court for the Eastern District of Texas, Sherman Division in Criminal No. 4:18-cr-00046-SDJ-BD-16, which is immediately followed by the Docket Entry Number. "CvDoc." refers to the Docket Report in the United States District Court for the Eastern District of Texas, Sherman Division in Civil No. 4:21-cv-00437-MAC-AGD, which is immediately followed by the Docket Entry Number. "PSR" refers to the Presentence Report in this case, which is immediately followed by the paragraph ("¶") number.

2

of A Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c). *Id.* The Fourth Superseding Indictment also contained Notice of Intention to Seek Criminal Forfeiture Allegations, pursuant to 18 U.S.C. § 924(d) and 21 U.S.C. § 853. *Id.*

On March 29, 2019, a Change of Plea Hearing was held Magistrate Judge Christine A. Nowak. See Doc. 656. Mendoza pled guilty to Count 1ssss of the Fourth Superseding Indictment pursuant to a Written Plea Agreement. See Doc. 658. The agreement included the following guideline stipulations:

- that the drug quantity involved in the conspiracy for which Mendoza would be held responsible was at least 45 kilograms of methamphetamine or 4.5 kilograms of actual methamphetamine, resulting in a base offense level of 38 under USSG § 2D1.1;

- that a three-level reduction for acceptance of responsibility would apply under USSG § 3E1.1 if the probation office recommended it but that this stipulation would become void if Mendoza later acted in a way that was inconsistent with his acceptance of responsibility (Mendoza further agreed that to be entitled to credit for acceptance of responsibility he "shall not violate any other state or federal law");

- that Mendoza did not qualify for a mitigating-role reduction under USSG § 3B1.2; and

- that Mendoza did qualify for a two-level increase under USSG § 2D1.1(b)(12) for maintaining a premises for the purpose of manufacturing or distributing a controlled substance.

*Id.* In the factual basis accompanying his plea, Mendoza originally stipulated, among other things, that his role in the conspiracy was to supply co-conspirators with

3

kilogram quantities of methamphetamine imported from Mexico; that he was a leader/organizer of the criminal activity; that he possessed firearms at the time of the offense; and that he maintained a premises for the purpose of manufacturing or distributing methamphetamine. The parties, however, later agreed to strike out Mendoza 's admissions regarding his role as a leader/organizer and his possession of firearms. See Doc. 660. At the conclusion of the Change of Plea Hearing, the Court order the U. S. Probation Department to prepare a PSR. See Doc. 656.

The Probation Officer prepared Mendoza's PSR that followed the terms of the parties' Plea Agreement. Count 1ssss: Conspiracy to Possess with Intent to Distribute 50 Grams or More of Methamphetamine (Actual) calls for a Base Offense Level of 38. Two levels were added for maintaining a premise for the purpose of controlled drug activities pursuant to U.S.S.G. § 2D1.1(b)(12). Another two levels increase because methamphetamine involved in the conspiracy was imported from Mexico pursuant to USSG § 2D1.1(b)(5). Additional two levels applied for possession of a firearm pursuant to USSG § 2D1.1(b)(1). Mendoza received a three (3) level reduction for acceptance of responsibility, pursuant to U.S.S.G. §§ 3E1.1(a) and (b).The PSR calculated Mendoza's Total Offense Level to be level 41. The probation officer scored Mendoza's Criminal History Category as III. Based upon a Total Offense Level of 41 and a Criminal History Category of III, the guide line

4

imprisonment range was 360 months to Life. The probation officer recommended a 360-month sentence.

On September 23, 2019, a Sentencing Hearing was held District Judge Marcia A. Crone. See Doc. 950. The Court sentenced sentenced Mendoza to a term of 420 months' imprisonment. See Doc. 957. It is followed by 5 years of Supervised Release, no Fine or Restitution. *Id.* The Court also ordered a payment of a Mandatory Special Assessment Fee of $100. *Id.*

On October 2, 2019, Mendoza timely filed a Notice of Appeal. See Doc. 962. On appeal, Mendoza raised four issues as follows: (1) whether Mendoza's trial counsel rendered ineffective assistance in failing to object to Mendoza not being granted an acceptance of responsibility reduction, given the Government's failure to sufficiently prove Mendoza's purported breach of the plea agreement; (2) whether Mendoza entered a voluntary, knowing guilty plea, given that the plea agreement and factual basis established that his sentencing "range" would be life in prison; (3) whether Mendoza voluntarily and knowingly waived his right to appeal; and alternatively, whether Mendoza's waiver of appeal should bar his appeal, given that the plea agreement was not supported by consideration. *Id.*

On July 21, 2020, the United States Court of Appeals for the Fifth Circuit ("Fifth Circuit") affirmed the District Court's Judgment. See Doc. 1072.

On September 15, 2020, Mendoza filed a Petition for a Writ of Certiorari in the U. S. Supreme Court. No Docket Entry.

On October 15, 2020, the Supreme Court denied Mendoza's Petition for a Writ of Certiorari. See Doc. 1127.

On June 10, 2021, Mendoza filed a *Pro Se* Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion") which was denied on August 21, 2024. See Doc. 1160, CvDocs. 14, 15.

## III. DISCUSSION

As a preliminary matter, Mendoza respectfully requests that this Court be mindful that *pro se* litigants are entitled to liberal construction of their pleadings. See *United States v. Kayode*, 777 F.3d 719 (5th Cir. 2014) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."); *Estelle v. Gamble,* 429 U.S. 97, 103 (1976); *Haines v Kerner*, 404 U.S. 519, 520 (1972) (same).

### A.    Federal Courts Have the Jurisdiction and Power to Reduce An Existing Sentence

This Court has the power to adjust Mendoza's sentence. District courts no longer need a motion from the Bureau of Prisons to resentence a federal prisoner under the compassionate release provisions of 18 U.S.C. §3582(c)(1)(A)(i). A district

6

court may now resentence if the inmate files a motion after exhausting administrative remedies. The reasons that can justify resentencing are not limited to medical, age, or family circumstances. A district court may resentence if the inmate demonstrates extraordinary and compelling reasons for a sentence reduction. Such reasons are present in this case.

      1.   <u>Historical Framework</u>

Congress first enacted the compassionate release provisions in 18 U.S.C. §3582 as part of the Comprehensive Crime Control Act of 1984. That legislation provided that a district court could modify a final term of imprisonment when extraordinary and compelling reasons warrant such a reduction. 18 U.S.C. §3582(c)(1)(A)(i). In 1984, this provision was conditioned on the Bureau of Prisons (BOP) filing a motion in the sentencing court. Absent a motion by the BOP, a sentencing court had no jurisdiction to modify an inmate's sentence. Congress did not define what constitutes an "extraordinary and compelling reason," but the legislative history recognized that the statute was intended, in part, to abolish and replace federal parole. Rather than have the parole board review for rehabilitation only, Congress authorized review for changed circumstances:

> The Committee believes that there may be unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances. These would include cases of severe illness,

7

cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence, and some cases in which the sentencing guidelines for the offense of which the defender was convicted have been later amended to provide a shorter term on imprisonment. S. Rep. No. 98-225 at 55-56 (1983).

18 U.S.C. § 3582 acts as a "safety valve" for the "modification of sentences" that would previously have been addressed through the former parole system. *Id.* at 121. The provision was intended "to assure the availability of specific review and reduction of a term of imprisonment for "extraordinary and compelling reasons" and [would allow courts] to respond to changes in the guidelines." *Id.* Thus, sentencing courts have the power to modify sentences for extraordinary and compelling reasons.

### 2. Section 3582(c)(1)(A) is Not Limited To Medical, Elderly or Childcare Circumstances

Congress initially delegated the responsibility for determining what constitutes "extraordinary and compelling reasons" to the United States Sentencing Commission. 28 U.S.C. § 994(t) ("The Commission…shall describe what should be considered "extraordinary and compelling reasons" for sentence reduction, including the criteria to be applied and a list of specific examples." Congress provided one limitation to that authority: "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). Rehabilitation could, however, be considered with other reasons to justify a reduction.

8

Pursuant to section 994(p) of title 28, United States Code, the United States Sentencing Commission hereby submits to the Congress the following amendments to the Guidelines Manual and the reasons therefor. As authorized by such section, the Commission specifies an effective date of November 1, 2023, for these amendments:

(b)    *Extraordinary and Compelling Reasons.*– Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:

　　(1)    *Medical Circumstance of the Defendant.*–

　　　　(A)    The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required.

　　　　(B)    The defendant is—

　　　　　　(i)    suffering from a serious physical or medical condition,

　　　　　　(ii)    suffering from a serious functional or cognitive impairment, or

　　　　　　(iii)    experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

　　　　(C)    The defendant is suffering from a medical condition that requires long-term or specialized medical care

> > that is not being provided and without which the defendant is at risk of serious deterioration in health or death.
>
> > (D)  The defendant presents the following circumstances—
>
> > > (i)   the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
> > >
> > > (ii)  due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
> > >
> > > (iii) such risk cannot be adequately mitigated in a timely manner.
>
> (2)  *Age of the Defendant.*— The defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (3)  *Family Circumstances of the Defendant.*—
>
> > (A)  The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.
>
> > (B)  The incapacitation of the defendant's spouse or registered partner when the defendant would be the

only available caregiver for the spouse or registered partner.

(C)     The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

(D)     The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, 'immediate family member' refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

(4)     *Victim of Abuse.*— The defendant, while in custody serving the term of imprisonment sought to be reduced, was a victim of:

(A)     sexual abuse involving a 'sexual act,' as defined in 18 U.S.C. § 2246(2) (including the conduct described in 18 U.S.C. § 2246(2)(D) regardless of the age of the victim); or

(B)     physical abuse resulting in 'serious bodily injury,' as defined in the Commentary to §1B1.1 (Application Instructions); that was committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant. For purposes of this provision, the misconduct must be established by a conviction in a criminal case, a finding or admission of liability in

11

a civil case, or a finding in an administrative proceeding, unless such proceedings are unduly delayed or the defendant is in imminent danger.

(5)   *Other Reasons.*— The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

(6)   *Unusually Long Sentence.*— If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

This amendment responds to, among other things, the First Step Act of 2018 ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239, which amended 18 U.S.C. § 3582(c)(1)(A) to authorize courts to grant a motion for a sentence reduction upon a defendant's own motion. Previously, a court was authorized to do so only upon the motion of the Director of the Bureau of Prisons ("BOP"). Congress amended the law "increasing the use" of sentence reduction motions under section 3582(c)(1)(A). First Step Act § 603(b).

3.    The First Step Act

12

The First Step Act, P.L. 115-391, 132 Stat. 5194, at (Dec. 21, 2018), among

other things, transformed the process for compassionate release. *Id.* at § 603. Now,

instead of depending upon the BOP to determine an inmate's eligibility for

extraordinary and compelling reasons and the filing of a motion by the BOP, a court

can resentence "upon motion of the defendant." A defendant can file an appropriate

motion if the he or she has exhausted all administrative remedies or "the lapse of 30

days from the receipt of such a request by the warden of the defendant's facility,

whichever is earlier." 18 U.S.C. §3582(c)(1)(A). The purpose and effect of this

provision is to give federal courts the ability to hear and resentence a defendant even

in the absence of a BOP motion. Congress labeled this change "Increasing the Use

and Transparency of Compassionate Release." 164 Cong. Rec. H10346, H10358

(2018). Senator Cardin noted in the record that the bill "expands compassionate

release under the Second Chance Act and expedites compassionate release

applications." 164 Cong. R. 199 at S7774 (Dec. 18, 2018). In the House,

Representative Nadler noted that the First Step Act includes "a number of very

positive changes, such as … improving application of compassionate release, and

providing other measures to improve the welfare of federal inmates." 164 Cong. R.

H10346-04 (Dec. 20, 2018).

Once an inmate has pursued administrative remedies through the BOP, upon

13

his or her motion, the sentencing court has jurisdiction and the authority to reduce a sentence if it finds "extraordinary and compelling reasons" to warrant a reduction. Judicial authority is no longer limited to cases that have the approval of the BOP.

4.    Mendoza Has Exhausted Administrative Remedies

A motion by an inmate can be filed in the district court after (1) the inmate has made the request to the Warden, and (2) either the request was denied or 30 days have lapsed from the receipt of the request, whichever is sooner. First Step Act of 2018, section 803(b), Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018).

In this case, Mendoza has faced significant challenges in filing an Administrative Remedy to the Warden at FCI Pollock. Despite his attempts to seek assistance, BOP personnel were unhelpful in facilitating the exhaustion of his administrative remedy. Consequently, Mendoza has sent a copy of this motion by U. S. Certified Mail directly with the Warden at FCI Pollock, hoping that this submission would prompt the BOP to address the issue on his behalf. By the time that this motion is filed in the Court, 30 days will have lapsed from the receipt of the request and exhaustion of administrative remedies should not be an issue in this case. See 18 U.S.C. § 3582(c)(1)(A).

B.    **The Changes in Relevant Law, along with Unwarranted**

14

**<u>Sentence Disparities among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct, Are Extraordinary and Compelling Circumstances That Warrant Release.</u>**

Section 3582(c) states that a district court cannot modify a term of imprisonment once it has been imposed except that, in any case:

> The court, upon motion of the Director of the Bureau of Prisons, or the defendant, pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (i)    extraordinary and compelling reasons warrant such a reduction.

18 U.S.C. § 3582(c)(1)(A).

In this case, there are at least three extraordinary and compelling reasons warranting such a reduction, discussed as follows:

### 1.    Drug Weight Calculation

Here, Mendoza urges the Court to assess *United States v. Stanback*, 377 F. Supp. 3d 618 (W.D. Va. 2019). In *Stanback*, Kelly George Stanback, represented by counsel, filed a motion to reduce his sentence pursuant to Section 404(b) of the First Step Act of 2018. ECF No. 1449. He asks the court to reduce his current sentence of 248 months to time served. The government asserts that Stanback is ineligible for

consideration of a reduction in his sentence, and in the alternative, that if he is eligible for consideration, a further reduction of his sentence is not warranted. The government suggests that the only relief to which Stanback is entitled is a reduction in his term of supervised release from 5 years to 4 years. For the reasons set forth below, the court granted Stanback's request and modified his sentence to time served, to be followed by a 4-year term of supervised release.

The drug weight is an element of the offense and that any fact that increases a mandatory minimum penalty is an element that must be charged in an indictment and proved to a jury beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and *Alleyne v. United States*, 570 U.S. 99, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013). Under those two cases, if Stanback were sentenced today, his sentence would be based on distributing 5 grams or more of cocaine base, and not 3,000 kg to 10,000 kg of Marijuana equivalent.

In *Apprendi*, the Supreme Court held that the Sixth Amendment to the Constitution requires that any fact that increases the penalty for a crime beyond the prescribed statutory maximum, other than the fact of a prior conviction, must be submitted to a jury and proved beyond a reasonable doubt. In *Alleyne*, the Court applied *Apprendi* to the federal mandatory minimum and maximum sentencing scheme and held that because mandatory minimum sentences increase the penalty for

16

a crime, any fact that increases the mandatory minimum is an element of the crime that must be submitted to the jury. *Id.* at 116, 133 S.Ct. 2151 (overruling *Harris v. United States*, 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002)).

Neither *Apprendi* nor *Alleyne* are retroactively applicable on collateral review. See *United States v. Sanders*, 247 F.3d 139, 146 (4th Cir. 2001) (joining other circuits in finding that *Apprendi* does not apply retroactively to cases on collateral review); and *United States v. Stewart*, 540 Fed.Appx. 171 (4th Cir. 2013) (*per curiam*) (noting that *Alleyne* has not been made retroactively applicable to cases on collateral review). However, for a period of time after *Apprendi* was decided, including before passage of the Fair Sentencing Act in 2010, the jury ordinarily made a finding regarding the threshold penalty, but the court could and did impose statutory-minimum penalties regardless of any jury finding. That practice was authorized by *Harris*, and *Alleyne* did not overrule *Harris* until three years later, and three years after the Fair Sentencing Act was enacted. Nonetheless, Congress, when drafting the First Step Act in 2018, surely did not intend for courts to disregard the last six years of Supreme Court federal sentencing jurisprudence and this court declines to do so.

*Alleyne* made clear that in order to preserve a defendant's Sixth Amendment right to a jury trial, any fact that increases the statutory mandatory minimum sentence is an element of the crime which must be submitted to the jury. *Alleyne*, 570 U.S. at

116, 133 S.Ct. 2151. In this case, Mendoza was pled guilty of conspiracy to possess with intent to distribute 50 grams or more of methamphetamine (actual). Under *Alleyne*, this court is not free to ignore that finding and impose a penalty based on 4.5 kilograms of actual methamphetamine as referenced in the PSR. Thus, although *Apprendi* and *Alleyne* are not retroactively applicable on collateral review, this court joins other courts in finding that their holdings are applicable in the context of the First Step Act. See *United States v. Simons*, No. 07-CR-00874, 375 F.Supp.3d 379, 487, 2019 WL 1760840 at *6 (E.D.N.Y. Apr. 22, 2019) (citing *Alleyne* and finding that statutory penalties are determined by facts submitted to a grand jury, trial jury, or established by a guilty plea while findings by a judge may be used to determine a sentence within the statutory penalties and cannot change "the mandatory minimum sentence now applicable"); *United States v. Dodd*, No. 3:03-CR-18-3, 372 F.Supp.3d 795, 2019 WL 1529516 (S.D. Iowa, Apr. 9, 2019) (finding in a First Step Act case that "[b]oth *Apprendi* and *Alleyne* are binding on this Court for sentencings held today."); *United States v. Davis*, No. 07-CR-245(S)(1), 2019 WL 1054554 (W.D.N.Y. Mar. 6, 2019), appeal docketed, No. 19-874 (2nd Cir. Apr. 5, 2019) ("[I]t is the statute of conviction, not actual conduct, that controls eligibility under the First Step Act."); see also *United States v. Laguerre*, No. 5:02-CR-30098-3, 2019 WL 861417 (W.D. Va. Feb. 22, 2019) (relying without discussion on charged drug weight rather than

18

PSR weight to find defendant eligible for relief).

Hence, Mendoza asserts that the government should have alleged 50 grams or more of actual methamphetamine to meet the required threshold and should have considered that the offense in question is a conspiracy, to which he pleaded guilty. He contends that, despite this, he was held accountable for 4.5 kilograms of actual methamphetamine, a quantity that was not proven beyond a reasonable doubt by a jury.

In sum, applying *Apprendi* and *Alleyne* logic to this case, Mendoza's Base Offense Level would now be 30. See also 2018 Sentencing Guidelines, indicating that "At least 500 G but less than 1.5 KG of Methamphetamine," calls for a Base Offense Level of 30, pursuant USSG § 2D1.1(c)(5). Applying the same enhancements, Mendoza's Total Offense Level would now be 36 in Criminal History Category of III, establishing an advisory Guidelines range of 235 to 293 months, which is a lesser harsh range of sentence. However, the mandatory minimum sentence is 120 months. At sentencing, the Court sentenced Mendoza to 420 months' imprisonment. Thus, Mendoza should have been sentenced to a term of 120 months' imprisonment.

2.     Methamphetamine Drug Purity Is Not a Proxy for

19

Culpability

The United States Sentencing Guidelines apply a harsher penalty for defendants involved with actual methamphetamine (high-purity) than those handling a mixture, based on the assumption that purity reflects a defendant's role in the drug operation. However, this assumption is outdated and no longer applicable to modern methamphetamine trafficking.

Numerous courts have recognized that methamphetamine purity does not reliably indicate a defendant's culpability. For instance, in *United States v. Nawanna*, 321 F. Supp. 3d 943 (N.D. Iowa 2018), the court found that high purity is no longer indicative of a defendant's proximity to the source of the drug, as nearly all methamphetamine distributed today is highly pure. This court should consider similar reasoning and follow its precedent in *United States v. Diaz*, 637 F.3d 592,603 (5th Cir. 2011), where it recognized that sentencing courts have discretion to vary from the Guidelines based on policy disagreements. The courts have rejected the notion that high purity should automatically equate to a higher sentence in cases involving low-level offenders, as in *United States v. Ibarra-Sandoval*, 265 F. Supp.3d 1249 (D.N.M. 2017).

Furthermore, in *Nawanna*'s case, the defendant was caught with

20

methamphetamine that was classified as "actual methamphetamine" or a high-purity form of the drug. According to the Sentencing Guidelines, the purity of methamphetamine is used to gauge a drug's harmfulness, which in turn influences the severity of the sentence. Higher purity generally results in harsher penalties. However, *Nawanna*'s defense argued that he did not know or control the purity of the drug and, as a lower-level courier, should not face a harsher sentence based solely on purity.

The Eighth Circuit agreed with this reasoning, holding that methamphetamine purity should not automatically determine sentence severity if the defendant was a low-level participant without control over the drug's purity. The court emphasized that the Sentencing Guidelines allow for flexibility and that courts should consider a defendant's role and level of involvement. The case set an important precedent, suggesting that sentencing courts need to evaluate the context and facts of each case more carefully and not impose severe penalties solely based on drug purity in cases involving low-level defendants.

This decision has implications for similar cases, as it highlights the importance of considering a defendant's role and knowledge in determining an appropriate sentence. Thus, the same reasoning should apply to Mendoza's case.

3.    Unwarranted Sentence Disparities Among Defendants

21

With Similar Records Who Have Been Found Guilty of<br>Similar Conduct

With respect to the need to avoid unwarranted sentencing disparities,

Mendoza urges the Court to consider the *Redd* cases:

- *United States v. Clark*, Case No. 11-CR-30-2-JPS (E.D. Wis. Jul. 23, 2020) quoting that in *Redd*, the Court evaluated whether extraordinary and compelling reasons existed to reduce the sentence by considering (1) the sentence the defendant originally received compared to the one he would receive today; (2) the disparity between those sentences; and (3) the reason for that disparity. *Redd*, 2020 WL 1248493, at *5. There, the court determined that the disparity was "primarily the result of Congress' conclusion that sentences like [defendant's] are unfair and unnecessary." *Id.* at *6.

- *United States v. Brooks*, Case No. 07-cr-20047-JES-DGB (C.D. Ill. May. 15, 2020) quoting that in *Redd*, the district court held "a court may find, independent of any motion, determination or recommendation by the BOP Director, that extraordinary and compelling reasons exist based on facts and circumstances other than those set forth in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) and that the reasons it has determined in this case constitute extraordinary and compelling reasons warranting a sentence reduction satisfy any requirement for consistency with any applicable policy statement."

- *United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *5 (D. Utah Feb. 18, 2020) (considering § 924(c) stacking changes one of several extraordinary and compelling reasons); *United States v. Urkevich*, No. 8:03CR37, 2019 WL 6037391, at *4 (D. Neb. Nov. 14, 2019) ("A reduction in his sentence is warranted by extraordinary and compelling reasons, specifically the injustice of facing a term of incarceration forty

22

> years longer than Congress now deems warranted for the crimes
> committed.").

Mendoza is now, in effect, to be re-sentenced today, after the passage of the

First Step Act; and the need to avoid unwarranted sentencing disparities is to be

assessed at the time of his sentencing today relative to those comparable offenders

who have been sentenced following the passage of the First Step Act and grants of

compassionate releases based on the need to avoid unwarranted sentencing

disparities, which expressly allowed for the possibility for a sentence reduction based

on an individualized assessment of the § 3553(a) factors and other criteria.

Mendoza essentially argues that the unwarranted sentencing disparity factor

must be determined only with reference to those comparably situated defendants–

those being sentenced today under a different sentencing structure and/or received a

reduction in sentence based on the need to avoid unwarranted sentencing disparities.

Mendoza's sentence in September 2019 is now disparate relative to Defendant's who

were sentenced post-FSA.

See e.g., *United States v. Vazquez-Rivera*, 470 F.3d 443, 449 (1st Cir. 2006)

(recognizing that "a district court may consider disparities among co-defendants in

determining a sentence"); *United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006)

("Although § 3553(a) does not require district courts to consider sentencing disparity

among co-defendants, it also does not prohibit them from doing so."); *United States v. Gomez*, 215 F. App'x 200, 202 (4th Cir. 2007) (implying that consideration of co-defendant disparities is allowed, but concluding that Gomez was not similarly situated to the co-defendant); *United States v. Bennett*, 664 F.3d 997, 1015 (5th Cir. 2011) ("[A]voiding unwarranted sentencing disparities among co-defendants is a valid sentencing consideration."), cert. denied, 11-9109, 2012 WL 733887 (Apr. 2, 2012); *United States v. Simmons*, 501 F.3d 620, 624 (6th Cir. 2007) ("A district judge, however, may exercise his or her discretion and determine a defendant's sentence in light of a co-defendant's sentence."); *United States v. Pulley*, 601 F.3d 660, 668 (7th Cir. 2010) ("Pulley properly contends that § 3553(a)(6) does not allow unwarranted sentencing disparities between co-defendants." (citing *Statham*, 581 F.3d at 556; *Bartlett*, 567 F.3d at 908–09)); *United States v. Lazenby*, 439 F.3d 928, 933 (8th Cir. 2006) (invalidating a sentence that resulted in unwarranted disparities between the sentences of the defendant and less culpable members of related conspiracies); *United States v. Saeteurn*, 504 F.3d 1175, 1181–83 (9th Cir. 2007) (upholding as a legitimate generalized § 3553(a) consideration the district court's decision to compare defendant with his co-defendants and sentence him in accordance with his role); *United States v. Smart*, 518 F.3d 800, 804 (10th Cir. 2008) ("[A] district court may also properly account for unwarranted disparities between codefendants who are similarly situated,

24

and...the district court may compare defendants when deciding a sentence."); *United States v. Zavala*, 300 F. App'x 792, 795 (11th Cir. 2008) ("It is not erroneous for the district court to have considered the 'unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct' when the statute specifically mandates such consideration."); *United States v. Mejia*, 597 F.3d 1329, 1344 (D.C. Cir. 2010) (considering and rejecting an argument that a disparity between co-defendants' sentences was unwarranted), cert. denied, 131 S. Ct. 586 (2010).

Under 18 U.S.C. § 3582(c)(2), to modify Mendoza's sentence, taking into account the advisory nature of the guidelines after *Brooker* and the considerations set forth in 18 U.S.C. § 3553(a). The court should find that a sentence of 120 months is sufficient, but not greater than necessary, and accounts for the sentencing factors the court must consider pursuant to 18 U.S.C. § 3553(a), specifically deterrence, protection of the public, and respect for the law.

Accordingly, Mendoza's motion should be granted.

## V. <u>CONCLUSION</u>

For the foregoing reason, Mendoza prays this Court grant his Motion for Compassionate Release and resentence him to time served or any other relief which the Court deems appropriate.

25

Respectfully submitted,

Dated: November 20, 2024.

_____

CRISTIAN MENDOZA
REG. NO. 28120-078
FCI POLLOCK
FEDERAL CORR. INSTITUTION
P.O. BOX 4050
POLLOCK, LA 71467
Appearing *Pro Se*

## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2024, a true and correct copy of the above and foregoing Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) and the First Step Act of 2018 was sent via U. S. Mail, postage prepaid, Ernest Gonzalez, Assistant U.S. Attorney at U.S. Attorney's Office-Plano, 101 E. Park Blvd., Suite 500, Plano, TX 75074.

_____

CRISTIAN MENDOZA